| Fill in this information to identify the case: | |
|---|---|
| Debtor name | The MT Distillery LLC |
| United States Bankruptcy Court for the: | DISTRICT OF MONTANA |
| Case number (if known) | 9:24-bk-90081 |

☐ Check if this is an amended filing

Official Form 425A

# Plan of Reorganization for Small Business Under Chapter 11   02/20

## The MT Distillery LLC's Plan of Reorganization, Dated August 15, 2024

[If this plan is for a small business debtor under Subchapter V, 11 U.S.C. § 1190 requires that it include "(A) a brief history of the business operations of the debtor; (B) a liquidation analysis; and (C) projections with respect to the ability of the debtor to make payments under the proposed plan of reorganization." The Background section below may be used for that purpose.

## Background for Cases Filed Under Subchapter V

### A. Description and History of the Debtor's Business

The Debtor (The MT Distillery LLC hereafter refereed to as MT Distillery or Debtor) is a Montana registered Limited Liability Company (LLC) licensed to first registered in the State of Montana on March , 26, 2009 to operate as a craft liquor distillery with retail sales and a tasting room. Although formed in 2009 actual operations did not begin until approximately 2014 / 2015 in Missoula, MT. In the Spring of 2020 the business moved operations from a rented location in Missoula MT to a rented location in Stevensville MT.

The move to Stevensville resulted in a lawsuit from the Debtor's former landlord, Epicure LLC including claims of breach of contract and defaulting on the commercial lease agreement. The end result of the lawsuit was a Judgment entering in 2023 for Epicure and against the Debtor which now stands at $137,760.00. See POC No. 4.

The move to Stevensville and associated setup costs as well as business interruptions caused by the COVID 19 pandemic resulted in the Debtor applying for, and receiving, numerous pandemic related financial assistance packages from the United States Small Business Administration (SBA) including a Paycheck Protection Plan loan that was forgiven and two Economic Injury Disaster Loans (EIDL) resulting in a total indebtedness today of $532,068.66. See POC No. 5.

The combination of the Epicure Judgment, EIDL debt, obligations to the Internal Revenue Service (IRS) and health issues with the husband of the Managing Member of the Debtor - who is also the head distiller for the business - led to the filing of this bankruptcy case. The Managing Member of the Debtor is Sharie McDonald (AKA Sharie McDonald Hleblichuk) her husband is Mark Hleblichuk hereafter these parties will be referred to as Sharie and Mark.

During the § 341 process the Debtor disclosed that funds from the EIDL loans were transferred into an account under the name of another entity formed by Sharie - Stilla Bleu LLC. It is undisputed that significant commingling of funds have occurred between the Debtor and Stilla Bleu and Sharie and Mark personally with the primary result of this being the purchase of 302 Main Street and 304 Main Street in Stevensville, MT. The Debtor's distilling operations and tasting room are located in 304 Main. Currently the value of these locations is approximately $582,100.00 based upon the Debtor's estimate and the 2024 Montana Cadastral Appraisal. The property at 302 Main is subject

to an owner carried mortgage with a remaining balance of approximately $145,000.00 and a balloon payment in approximately three years.

Additionally, it was disclosed that commingled funds were used to purchase a 2017 Ram 1500 series pick up and a 2021 Jeep Wrangler. These vehicles are titled in Sharie and Mark's names but included in the depreciation schedules of the Debtor. The value of these vehicles today per Kelley Blue Books is $22,500.00 and $27,237.00.

It is the Debtor's understanding that the United States Trustee's office believes these assets, and potentially others, could be recovered through a fraudulent transfer action either in a Chapter 11 setting or by conversion to a Chapter 7. The Debtor will address this proposition in the liquidation analysis.

Since the filing of the bankruptcy the Debtor has continued ot operate as a debtor-in-possession.

### B.   Liquidation Analysis

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. A liquidation analysis is attached to the Plan as **Exhibit A.**

### C.   Ability to make future plan payments and operate without further reorganization

The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments and operate the debtor's business.

The Plan Proponent has provided projected financial information as **Exhibit B**.

The Plan Proponent's financial projections show that the Debtor will have projected disposable income (as defined by § 1191(d) of the Bankruptcy Code). Please refer to **Article 7: Means for Implementation of the Plan** for a discussion of how the projected financials may differ from those historically presented by the Debtor.

The Debtors' Plan shall be for a period of 5 years or until the payments provided for in the Plan have been completed, whichever occurs first. The first plan payments shall be made on the 15th day of the first full month following confirmation, as such, should the Plan be confirmed in October 2024 the first payment would come due November 15, 2024. The final Plan payment shall be paid on or before the 60th month following Confirmation.

The final Plan payment is expected to be paid on **November 15, 2029**.

**You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.**

### Article 1: Summary

This Plan of Reorganization (the *Plan*) under chapter 11 of the Bankruptcy Code (the *Code*) proposes to pay creditors of **The MT Distillery LLC** from cash flow from current operations and by capital contributions from the Equity Security Holders.

This Plan provides for:

- __1__ class of priority claims;
- __1__ class of secured claims;
- __2__ classes of non-priority unsecured claims; and
- __1__ class of equity security holders.

Non-priority unsecured creditors holding allowed claims will receive distributions, which the proponent of this Plan has valued at approximately **.12** cents on the dollar with the exception of the non-pecuniary general unsecured claims of the SBA and IRS as described below. This Plan also provides for the payment of administrative and priority claims.

All creditors and equity security holders should refer to Articles 3 through 6 of this Plan for information regarding the precise treatment of their claim.

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

### Article 2: Classification of Claims and Interests

| | | |
|---|---|---|
| 2.01 | **Class 1** | All allowed claims entitled to priority under § 507(a) of the Code (except administrative expense claims under § 507(a)(2), and priority tax claims under § 507(a)(8)). No such claims exist. |
| 2.02 | **Class 2** | The claim of SBA, POC No. 3 to the extent allowed as a secured claim under § 506 of the Code. |
| 2.03 | **Class 3A** | Non-priority unsecured claims allowed under § 502 of the Code, including the general unsecured non-priority claim of the IRS - EXCEPT - that portion of the unsecured general claim of the IRS that is non-pecuniary (i.e. penalties including interest thereon) and the non-pecuniary penalty, if any, of the SBA.. |

[Add other classes of unsecured claims, if any.]

| | | |
|---|---|---|
| 2.03 | **Class 3B** | Subrogated non-pecuniary non-priority unsecured claims if the IRS and SBA allowed under § 502 of the Code. |
| 2.04 | **Class 4** | Equity interests of the Debtor. |

## Article 3: Treatment of Administrative Expense Claims, Priority Tax Claims, and Quarterly and Court Fees

| | | |
|---|---|---|
| 3.01 | **Unclassified claims** | Under section § 1123(a)(1), administrative expense claims, and priority tax claims are not in classes. |
| 3.02 | **Administrative expense claims** | Each holder of an administrative expense claim allowed under § 503 of the Code, will be paid in full on the effective date of this Plan, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor. |
| 3.03 | **Priority tax claims** | The priority tax claim of the IRS is $87,434.35 plus statutory interest as governed by 11 U.S.C. § 511(a). The claim of the IRS shall receive monthly payments of $1000.00 beginning on or before the 15th day of the first full month after the Confirmation of the Debtor's Plan and continuing for the first 24 months of the Plan. Then monthly payments of $1500.00 per month after the 24th month of the Plan. The balance of the IRS claim shall be paid in full on or before the 60th month following the Petition Date (March 2029). The Debtor may accelerate or pre-pay the priority tax claim of the IRS. |
| 3.04 | **Statutory fees** | All fees required to be paid under 28 U.S.C. § 1930 that are owed on or before the effective date of this Plan have been paid or will be paid on the effective date. |
| 3.05 | **Prospective quarterly fees** | N/A |

## Article 4: Treatment of Claims and Interests Under the Plan

4.01 **Claims and interests shall be treated as follows under this Plan:**

| Class | Impairment | Treatment |
|---|---|---|
| Class 1 - **Priority claims** excluding those in Article 3 | ☐ Impaired<br>☑ Unimpaired | Any claim entitled to priority pursuant to § 507(a)(2) shall be paid as described in § 3.02. No claims are believed to exist in this Class. |
| Class 2 – **Secured claim of SBA** | ☐ Impaired<br>☑ Unimpaired | This claim is secured by a U.C.C. security agreement on all tangible and intangible personal property of the Debtor including accounts receivable and equipment. The claim total is $532068.66 reflecting outstanding indebtedness including accrued interest as of the effective date. The claim shall |

be treated as fully secured.

The loan will be re-amoritized the loan to place the outstanding accrued interest into the loan and the loan shall be paid pursuant to the terms of the loan agreement including the agreed interest rate of 3.75% over the remaining approximately 26 years of the term.

The SBA claim and shall be treated and paid according to the pre-petition contracts entered into by the parties including but not limited to any loan default provisions contained therein. Monthly payments in the amount of $2,479.00 shall commence on or before the 15th day of the first full month after the Confirmation of the Debtor's Plan and be adjusted upon re-amortization by the SBA.

SBA's security interest shall continue in its current priority position in all of Debtor's current and future tangible and intangible personal property to the full extent provided by the terms of the Note and Security Agreement until payment in full of the debt or release by the SBA. **Additionally, as provided for in Article 7 below, the Debtor upon receiving title to or assignment of the interest in 302 and 304 Main Street, Stevensville MT; and the 2017 Dodge Ram and 2021 Jeep Wrangler, shall grant a security interest in these assets subject to approval of the SBA.**

This Plan shall be sufficient and conclusive evidence of the validity, enforceability, perfection, and priority of the SBA's security interest without the necessity of (a) signing, filing, or recording any financing statement, mortgage, security agreement, pledge agreement, control agreement, or other instrument or document that may otherwise be required under the law of

| | | |
|---|---|---|
| | | any jurisdiction, (b) obtaining "control" (as defined in any applicable Uniform Commercial Code or other law) over any property, or (c) taking any other action to validate or perfect the liens and or to entitle the liens to the priorities granted herein. |
| **Class 3A– Non-priority unsecured claims allowed under § 502 of the Code, including the general unsecured non-priority claim of the IRS - EXCEPT - that portion of the unsecured general claim of the IRS that is non-pecuniary and any non-pecuniary claim of the SBA** | ☑ Impaired<br>☐ Unimpaired | The Class 3A non-priority unsecured creditors will receive a distribution equal to 12% of their filed non-contested claim. This payment will be made from capital contributions from the Equity Security Holders before the last day of the fourth full month after the Confirmation of the Debtor's Plan.<br><br>The total payment is not less than the holders of such claims would receive if the Debtor was forced to liquidate under Chapter 7. |
| **Class 3B- Non-pecuniary, non-priority general unsecured claims of the IRS and SBA** | ☑ Impaired<br>☐ Unimpaired | The Class 3B non-pecuniary, non-priority general unsecured claims of the IRS and SBA shall be subordinated to the general unsecured claims treated in Class 3A and will not receive payment under the Plan. The Plan does not impact any non-dischargeability claim that may exist as to the claims in Class 3B. |
| Class 4 - **Equity security holders of the Debtor** | ☐ Impaired<br>☑ Unimpaired | Class 4 includes the Interests in the Debtor held by the pre-confirmation members of the LLC. Class 4 is unimpaired by this Plan. On the Effective Date of the Plan Class 4 shall retain its Interests in the Debtor as set forth prior to the Confirmation Date. |

## Article 5: Allowance and Disallowance of Claims

**5.01** **Disputed Claim**  A *disputed claim* is a claim that has not been allowed or disallowed [by a final non-appealable order], and as to which either:

(i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or

(ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

**5.02** **Delay of distribution on a disputed claim**  No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order.

**5.03** **Settlement of disputed claims**  The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## Article 6: Provisions for Executory Contracts and Unexpired Leases

**6.01** **Assumed executory contracts and unexpired leases**

(a) The Debtor assumes, and if applicable assigns, the following executory contracts and unexpired leases as of the effective date:

N/A

(b) Except for executory contracts and unexpired leases that have been assumed, and if applicable assigned, before the effective date or under section 6.01(a) of this Plan, or that are the subject of a pending motion to assume, and if applicable assign, the Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases as of the effective date.

A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than **N/A** days after the date of the order confirming this Plan.

## Article 7: Means for Implementation of the Plan

The Debtor shall make the monthly payments provided for in this Plan to the SBA and IRS from post-confirmation revenues generated by the operation of the Debtor's business.

The Debtor shall make the lump sum payments to Class 3A by way of capital contributions made by the Sharie McDonald. The capital contribution is meant to replicate the payment that might be afforded these creditors if a Chapter 7 liquidation were to occur with a fraudulent transfer action as described in Exhibit A.

Furthermore, in accordance with the potential fraudulent recovery action as described in Exhibit A, within 45 days of the Confirmation Order the Sharie McDonald shall transfer or assign all rights to 302 and 304 Main Street Stevensville MT, the 2017 Dodge Ram and 2021 Jeep Wrangler, and any other asset known or unknown of Stilla Bleu LLC to the Debtor and provide the SBA with security interests in these assets to the SBA's satisfaction. Additionally, prior to Confirmation all bank accounts held in Stilla Bleu LLC's name shall be closed with any balance transferred to the Debtor's DIP account. All future revenue and expenses associated with 302 and 304 Main Street, Stevensville MT shall be accounted for in the Debtor's profit and loss reports and future financial disclosures.

Upon Confirmation of the Plan the property of the Debtor shall revest to the Debtor free and clear of any and all liens or interests other than set forth in this Plan. Specifically the lien held by the SBA. Furthermore, the Debtor acknowledges the deed of trust currently in place on 302 Main Street will not be impacted by this Plan and will be paid as an ordinary business expense by the Debtor with the understanding payment of the lien will increase the SBA's secured position in the property.

The Plan term is anticipated to be five years (60 months) but may be impacted by whether the Plan is consensually confirmed under 11 U.S.C. § 1191(a) or non-consensually confirmed under 11 U.S.C. § 1191(b).
If the Plan is consensually confirmed under 11 U.S.C. § 1191(a), the Plan term may be 5 years but may be completed after the third year of the Plan if all provisions and payments set forth herein have been completed.
If the Plan is non-consensually confirmed under 11 U.S.C. § 1191(b), the Plan term shall be 5 years. If the Plan is confirmed under § 1191(b) payments under the confirmed plan shall be made directly by the Debtor additionally the Debtor shall provide the Chapter 11 Sub V Trustee with a monthly report by the 14th day of each month identifying payments made under the plan in the previous month.

**Article 8: General Provision**

| | | |
|---|---|---|
| Debtor | **The MT Distillery LLC** <br> Name | Case number (*if known*) 9:24-bk-90081 |

| | | |
|---|---|---|
| 8.01 | **Definitions and rules of construction** | The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions: <br><br> NA |
| 8.02 | **Effective Date** | The effective date of this Plan is the first business day following the date that is 14 days after the entry of the confirmation order. If, however, a stay of the confirmation order is in effect on that date, the effective date will be the first business day after the date on which the stay expires or is otherwise terminated. |
| 8.03 | **Severability** | If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan. |
| 8.04 | **Binding Effect:** | The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity. |
| 8.05 | **Captions** | The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan. |
| 8.06 | **Controlling Effect** | Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Montana govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.] |
| 8.07 | **Disclosure of Insiders and Compensation** | The Debtor makes the following disclosures pursuant to 11 U.S.C. § 1191(a). <br><br> Currently two individuals who fit the definition of "insider" are employees of the Debtor. These individuals and their compensation is as follows: <br><br> Sharie McDonald, Managing Member compensation estimated at $55,000.00 per year. <br><br> Mark Hleblichuk, (Sharie's husband) compensation estimated at $0.00 per year. <br><br> Both Sharie and Mark are integral to the operations of the Debtor based upon their knowledge and experience operating the company since its inception. Both parties will be retained in their current capacities and compensation levels without increases in compensation occurring until after payment to Class 3A claims have been made pursuant to this Plan. |

| 8.08 | **Retention of Jurisdiction** | The United States Bankruptcy Court for the District of Montana shall continue to maintain jurisdiction subsequent to Confirmation for the purpose of: |
|---|---|---|

(a) Fixing and allowance of any claims as a cost and expense of the administration of the reorganization case.

(b) Re-examine any claim that has been allowed.

(c) Hearing and determining any objection to a claim which objection is filed with the Bankruptcy Court by the Debtor.

(d) Hearing and determining any action brought by the Debtor or the Debtor-in-possession seeking to avoid any transfer of an interest of Debtor's in property, or any obligation incurred by Debtor, that is avoidable pursuant to the Bankruptcy Code.

(e) Hearing and determining all causes of action, controversies, disputes, or conflicts between or among the Debtor and any other party, including those that were pending prior to confirmation and that are specially set forth and reserved in the Order of Confirmation.

(f) Hearing and determining all questions and disputes regarding titles to the property of the Debtor or the Debtor's estate.

(g) Correcting any defect, curing any omission, or reconciling any inconsistency in the Plan or Order of Confirmation as may be necessary to carry out the purpose and intent of the Plan.

(h) Hearing and determining any action brought by the Debtor to protect the Debtor and the Debtor's estate from actions of creditors or other parties of interest.

(i) Issuing any order necessary to implement the Plan or Order of Confirmation, including, without limitation, such declaratory and injunctive order as are appropriate to protect the Debtor, the Debtor's estate, the reorganized Debtor, and the reorganized Debtor's estate from actions of creditors or other parties in interest that are in violation of the Plan.

(j) Hearing and determining any dispute relating to the terms or implementation of the Plan or Order of Confirmation, or that the rights or obligations of any parties in interest with respect hereto.

(k) Confirmation of a modified Plan under Article VII above or the confirmation of a modified Plan pursuant to Section 1127(b) of the Bankruptcy Code.

(l) Entering orders concluding and terminating the reorganization case.

## Article 9: Discharge

If the Debtor's Plan is confirmed under § 1191(a), on the effective date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt:
    (i) imposed by this Plan; or
    (ii) to the extent provided in § 1141(d)(6).

If the Debtor's Plan is confirmed under § 1191(b), confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the first 3 years of this Plan, or as otherwise provided in § 1192 of the Code. The Debtor will not be discharged from any debt:
    (i) on which the last payment is due after the first 3 years of the plan, or as otherwise provided in § 1192;
    or
    (ii) excepted from discharge under §

## Article 10: Other Provisions

    None.

| Debtor | The MT Distillery LLC | Case number (*if known*) | 9:24-bk-90081 |
|---|---|---|---|
| | Name | | |

Respectfully submitted,

**X /s/ Sharie L. McDonald**
[Signature of the Plan Proponent]

**Sharie L. McDonald**
[Printed name]

**X /s/ Matt Shimanek**
[Signature of the Attorney for the Plan Proponent]

**Matt Shimanek**
[Printed name]