| Fill in this information to identify the case: | |
|---|---|
| Debtor name | **The MT Distillery LLC** |
| United States Bankruptcy Court for the: | DISTRICT OF MONTANA |
| Case number (if known) | 9:24-bk-90081 |

☐ Check if this is an amended filing

Official Form 425A

# AMENDED Plan of Reorganization for Small Business Under Chapter 11 02/20

### The MT Distillery LLC's Plan of Reorganization, Dated October 22, 2024

[If this plan is for a small business debtor under Subchapter V, 11 U.S.C. § 1190 requires that it include "(A) a brief history of the business operations of the debtor; (B) a liquidation analysis; and (C) projections with respect to the ability of the debtor to make payments under the proposed plan of reorganization." The Background section below may be used for that purpose.

**Background for Cases Filed Under Subchapter V**

 A. **Description and History of the Debtor's Business**

  <u>(i) General history of the Debtor and cause of the bankruptcy filing</u>

  The Debtor (The MT Distillery LLC hereafter referred to as MT Distillery or Debtor) is a Montana registered Limited Liability Company (LLC) licensed to first registered in the State of Montana on March , 26, 2009 to operate as a craft liquor distillery with retail sales and a tasting room. Although formed in 2009 actual operations did not begin until approximately 2014 / 2015 in Missoula, MT. In the Spring of 2020 the business moved operations from a rented location in Missoula MT to a rented location in Stevensville MT.

  The move to Stevensville resulted in a lawsuit from the Debtor's former landlord, Epicure LLC including claims of breach of contract and defaulting on the commercial lease agreement. The end result of the lawsuit was a Judgment entering in 2023 for Epicure and against the Debtor which now stands at $137,760.00. See POC No. 4.

  The move to Stevensville and associated setup costs as well as business interruptions caused by the COVID 19 pandemic resulted in the Debtor applying for, and receiving, numerous pandemic related financial assistance packages from the United States Small Business Administration (SBA) including including PPP, RRF and EIDL as detailed by the SBA in its Proof of Claim. See POC No. 3 (amended).

  The combination of the Epicure Judgment, EIDL debt, obligations to the Internal Revenue Service (IRS) and health issues with the husband of the Managing Member of the Debtor - who is also the head distiller for the business - led to the filing of this bankruptcy case. The Managing Member of

the Debtor is Sharie McDonald (AKA Sharie McDonald Hleblichuk) her husband is Mark Hleblichuk hereafter these parties will be referred to as Sharie and Mark.

(ii) DIscovery of Potential Fraudulent Transfers and Intent to Recover Transfers into the Estate

During the § 341 process the Debtor disclosed that the Debtor's funds were transferred into an account under the name of another entity formed and solely owned by Sharie - Stilla Bleu LLC. It is undisputed that significant commingling of funds have occurred between the Debtor and Stilla Bleu and Sharie and Mark personally with the primary result of this being the purchase of 302 Main Street and 304 Main Street in Stevensville, MT. The Debtor's distilling operations and tasting room are located in 304 Main. Currently the value of these locations is approximately $582,100.00 based upon the Debtor's estimate and the 2024 Montana Cadastral Appraisal. The property at 302 Main is subject to an owner carried mortgage with a remaining balance of approximately $145,000.00 and a balloon payment in approximately three years.

Additionally, it was disclosed that the Debtor's funds were used to purchase a 2017 Ram 1500 series pick up and a 2021 Jeep Wrangler. These vehicles are titled in Sharie and Mark's names but included in the depreciation schedules of the Debtor. The value of these vehicles today per Kelley Blue Books is $22,500.00 and $27,237.00.

The transfer of the Debtor's funds and use of said funds for the purchase of the real estate and vehicles are potentially avoidable fraudulent transfers and said assets or the value of said assets could be recovered into the bankruptcy estate under 11 U.S.C. § 548 or applicable State or Federal law. Sharie, on behalf of Stilla Bleu LLC, and Mark and Sharie individually in order to avoid a potential adversary lawsuit have agreed to stipulate to the turnover to the bankruptcy estate the real estate and vehicles. **See Exhibit A Stipulation of Stilla Bleu LLC, Mark Hleblichuck and Sharie McDonald.**

(iii) General Description of this Plan

The Debtor will, through this Plan, liquidate the real property, vehicles, and all of the tangible and intangible personal property of the Debtor. The sale of these assets will occur on or before March 15, 2025. The net proceeds realized from the liquidation shall be paid to the allowed secured, priority unsecured, and general unsecured claims of the Debtor in order of priority as set forth in this Plan. The Debtor is not seeking a Discharge under this Plan and upon completion of the Plan the Debtor will cease to exist.

(iv) Debtor's Post-Bankruptcy Activities

Since the filing of the bankruptcy the Debtor has continued ot operate as a debtor-in-possession.

### B. Liquidation Analysis

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. A liquidation analysis is attached to the Plan as **Exhibit B.**

### C. Ability to make future plan payments and operate without further reorganization

The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments and operate the debtor's business.

The Debtor will continue to operate as a going concern making until the liquidation of the tangible and intangible personal property of the Debtor occurs. Upon the sale of the personal property of the Debtor the Subchapter V Trustee will act as the dispersing agent for future payments under the Plan.

For a more in depth discussion of dispersements under the Plan please refer to **Article 7: Means for Implementation of the Plan.**

The Plan Proponent has provided projected financial information as **Exhibit C**.

The final Plan payment is expected to be paid on or before **April 30, 2025**.

**You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.**

## Article 1: Summary

This Plan of Reorganization (the *Plan*) under chapter 11 of the Bankruptcy Code (the *Code*) proposes to pay creditors of **The MT Distillery LLC** from cash flow from current operations and by liquidation of the tangible personal property of the Debtor and assets recovered into the estate.

This Plan provides for:

    __1__ class of priority claims;
    __1__ class of secured claims;
    __1__ classes of non-priority unsecured claims; and
    __1__ class of equity security holders.

Non-priority unsecured creditors holding allowed claims will receive distributions, which the proponent of this Plan has valued at approximately **.30** cents on the dollar. This Plan also provides for the payment of administrative and priority claims.

All creditors and equity security holders should refer to Articles 3 through 6 of this Plan for information regarding the precise treatment of their claim.

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

## Article 2: Classification of Claims and Interests

| | | |
|---|---|---|
| 2.01 | **Class 1** | All allowed claims entitled to priority under § 507(a) of the Code (except administrative expense claims under § 507(a)(2), and priority tax claims under § 507(a)(8)). No such claims exist. |
| 2.02 | **Class 2** | The claim of SBA, POC No. 3 to the extent allowed as a secured claim under § 506 of the Code. Any portion of the SBA claim not treated as an allowed secured claim shall be deemed a general unsecured claim and subject to treatment as a Class 3 claim. |
| 2.03 | **Class 3** | Non-priority unsecured claims allowed under § 502 of the Code, including the general unsecured non-priority claim of the IRS and the SBA..<br><br>[Add other classes of unsecured claims, if any.] |
| 2.04 | **Class 4** | Equity interests of the Debtor. |

## Article 3: Treatment of Administrative Expense Claims, Priority Tax Claims, and Quarterly and Court Fees

| | | |
|---|---|---|
| 3.01 | **Unclassified claims** | Under section § 1123(a)(1), administrative expense claims, and priority tax claims are not in classes. |
| 3.02 | **Administrative expense claims** | Each holder of an administrative expense claim allowed under § 503 of the Code, will be paid in full on the effective date of this Plan, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor and the Subchapter V Trustee acting as the dispersing agent. |
| 3.03 | **Priority tax claims** | The priority tax claim of the IRS is $87,434.35 plus statutory interest as governed by 11 U.S.C. § 511(a). The priority claim, as may be amended, of the IRS shall be paid from the funds generated by the liquidation of the Debtor's property and paid at the Effective Date of the Plan. |
| 3.04 | **Statutory fees** | All fees required to be paid under 28 U.S.C. § 1930 that are owed on or before the effective date of this Plan have been paid or will be paid on the effective date. |
| 3.05 | **Prospective quarterly fees** | N/A |

## Article 4: Treatment of Claims and Interests Under the Plan

4.01 **Claims and interests shall be treated as follows under this Plan:**

| Class | Impairment | Treatment |
|---|---|---|
| Class 1 - **Priority claims** excluding those in Article 3 | ☐ Impaired<br>☑ Unimpaired | Any claim entitled to priority pursuant to § 507(a)(2) shall be paid as described in § 3.02. No claims are believed to exist in this Class. |
| Class 2 – **Secured claim of SBA** | ☑ Impaired<br>☐ Unimpaired | This claim is partially secured by a U.C.C. security agreement on all tangible and intangible personal property of the Debtor including accounts receivable and equipment. The claim total is $1,460,963.48.<br><br>The SBA claim and shall be treated and paid according to the pre-petition contracts entered into by the parties including but not limited to any loan |

default provisions contained therein and applicable statutory and regulatory authority. Specifically, the claim shall be bifurcated with a portion receiving payment as a secured claim based upon the sale of the Debtor's personal property and the remaining claim being treated as a general unsecured claim.

SBA's security interest shall continue in its current priority position in all of Debtor's current and future tangible and intangible personal property to the full extent provided by the terms of the Note and Security Agreement until payment in full of the debt or release by the SBA.

This Plan shall be sufficient and conclusive evidence of the validity, enforceability, perfection, and priority of the SBA's security interest without the necessity of (a) signing, filing, or recording any financing statement, mortgage, security agreement, pledge agreement, control agreement, or other instrument or document that may otherwise be required under the law of any jurisdiction, (b) obtaining "control" (as defined in any applicable Uniform Commercial Code or other law) over any property, or (c) taking any other action to validate or perfect the liens and or to entitle the liens to the priorities granted herein.

| | | | |
|---|---|---|---|
| | **Class 3–Non-priority unsecured claims allowed under § 502 of the Code, including the general unsecured non-priority claim of the IRS and SBA** | ☑ Impaired<br>☐ Unimpaired | The Class 3 non-priority unsecured creditors will receive a prorata distribution of the remaining funds after payment in full of the priority unsecured and administrative claims and the allowed secured claim of the SBA.<br><br>The total payment is not less than the holders of such claims would receive if the Debtor was forced to liquidate under Chapter 7. |
| | Class 4 - **Equity security holders of the Debtor** | ☑ Impaired<br>☐ Unimpaired | Class 4 includes the Interests in the Debtor held by the pre-confirmation members of the LLC. Class 4 is |

impaired by this Plan. Upon Confirmation of the Plan all interests in the Debtor shall vest solely in Sharie McDonald specifically any interest held by Joe Hleblichuck shall be extinguished.

Upon the final payment under the Plan the Debtor shall cease to exist.

### Article 5: Allowance and Disallowance of Claims

**5.01 Disputed Claim**  A *disputed claim* is a claim that has not been allowed or disallowed [by a final non-appealable order], and as to which either:

(i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or

(ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

**5.02 Delay of distribution on a disputed claim**  No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order.

**5.03 Settlement of disputed claims**  The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

### Article 6: Provisions for Executory Contracts and Unexpired Leases

**6.01 Assumed executory contracts and unexpired leases**

(a) The Debtor assumes, and if applicable assigns, the following executory contracts and unexpired leases as of the effective date:

N/A

(b) Except for executory contracts and unexpired leases that have been assumed, and if applicable assigned, before the effective date or under section 6.01(a) of this Plan, or that are the subject of a pending motion to assume, and if applicable assign, the Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases as of the effective date.

A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than **N/A** days after the date of the order confirming this Plan.

## Article 7: Means for Implementation of the Plan

The Debtor shall implement this Plan by the liquidation of all its personal property interests and the liquidation of the recovered assets - 302 and 304 Main Street Stevensville MT, the 2017 Dodge Ram and 2021 Jeep Wrangler. The liquidation shall be made pursuant to 11 U.S.C. § 1123(a)(5)(D) unless prior to confirmation of this Plan the Bankruptcy Court approves a sale pursuant to 11 U.S.C. § 363(f). Any proposed sale must include an allocation of the proposed purchase price to all tangible and intangible assets based on a fair market value. Any sale must be approved by the SBA prior to acceptance by the Debtor.

The Subchapter V Trustee shall act as the Disbursing Agent of the Plan in accordance with 11 U.S.C. § 1194(b).

There is currently a Buy-Sell Agreement entered into by the Debtor for the sale of the personal property of the Debtor and the vehicles. Upon the completion of the sale of the property contained within the Buy-Sell all proceeds shall be turned over to the Subchapter V Trustee to be held pending disbursement. Additionally, upon the sale of the Debtor's personal property all funds held by the Debtor within it's Debtor in Possession bank account - and any and all other funds of the Debtor including other accounts and or cash - shall be turned over to the Subchapter V Trustee to be held pending disbursement and to be used to preserve the remaining property of the estate inclusive of the real property.

Upon the sale of the real property, any net funds after the payment of reasonable and usual closing costs, including but not limited to the deed of trust currently in place on 302 Main Street, shall be turned over to the Subchapter V Trustee to be held pending disbursements under the Plan.

It is anticipated that the liquidation of the Debtor as proposed within this Plan shall occur on or before March 15, 2025. Failing to succeed with liquidation prior to this date will result in the case being converted to one under Chapter 7 of the Bankruptcy Code.

Anticipated disbursements under this Plan include all payments to claims as set forth in this Plan and any costs associated with the administration of the Plan including capital gains tax resulting from the liquidation of the Debtor and associated accounting fees.

Upon the last payment made under the Plan the Debtor will move to close the bankruptcy and the Debtor will cease to exist.

Upon Confirmation of the Plan the property of the Debtor shall remain property of the bankruptcy estate subject to liquidation as set forth herein.

## Article 8: General Provision

| 8.01 | **Definitions and rules of construction** | The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions: |
| --- | --- | --- |
| | | NA |
| 8.02 | **Effective Date** | The effective date of this Plan is the first business day following the closing of the sale, or sales, of all the Debtor's personal property and the recovered property - the real property and vehicles and payments to the Allowed administrative claims and Allowed secured claim. |
| 8.03 | **Severability** | If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan. |
| 8.04 | **Binding Effect:** | The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity. |
| 8.05 | **Captions** | The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan. |
| 8.06 | **Default** | The failure of the Debtor to comply with the terms of this Plan, including but not limited to the liquidation of the Debtor's personal property and the recovered property on or before March 15, 2025 shall be deemed a default under the terms of the Plan and the case shall be converted to one under Chapter 7 of the code. |
| 8.07 | **Controlling Effect** | Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Montana govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.] |

| | | |
|---|---|---|
| 8.08 | **Disclosure of Insiders and Compensation** | The Debtor makes the following disclosures pursuant to 11 U.S.C. § 1191(a).<br><br>Currently two individuals who fit the definition of "insider" are employees of the Debtor. These individuals and their compensation is as follows:<br><br>Sharie McDonald, Managing Member, and Mark Hleblichuk, (Sharie's husband). Both Sharie and Mark are integral to the operations of the Debtor based upon their knowledge and experience operating the company since its inception. Both parties will be retained in their current capacity with a compensation not to exceed $5000.00 per month during the pendency of their employment under the Plan. No personal expenses of Sharie and Mark will be paid by the Debtor other than the compensation above. |

| Debtor | The MT Distillery LLC | Case number (*if known*) | 9:24-bk-90081 |
|---|---|---|---|
| | Name | | |

| 8.09 | **Retention of Jurisdiction** | The United States Bankruptcy Court for the District of Montana shall continue to maintain jurisdiction subsequent to Confirmation for the purpose of: |
|---|---|---|

(a) Fixing and allowance of any claims as a cost and expense of the administration of the reorganization case.

(b) Re-examine any claim that has been allowed.

(c) Hearing and determining any objection to a claim which objection is filed with the Bankruptcy Court by the Debtor.

(d) Hearing and determining any action brought by the Debtor or the Debtor-in-possession seeking to avoid any transfer of an interest of Debtor's in property, or any obligation incurred by Debtor, that is avoidable pursuant to the Bankruptcy Code or other applicable state or federal law.

(e) Hearing and determining all causes of action, controversies, disputes, or conflicts between or among the Debtor and any other party, including those that were pending prior to confirmation and that are specially set forth and reserved in the Order of Confirmation.

(f) Hearing and determining all questions and disputes regarding titles to the property of the Debtor or the Debtor's estate.

(g) Correcting any defect, curing any omission, or reconciling any inconsistency in the Plan or Order of Confirmation as may be necessary to carry out the purpose and intent of the Plan.

(h) Hearing and determining any action brought by the Debtor to protect the Debtor and the Debtor's estate from actions of creditors or other parties of interest.

(i) Issuing any order necessary to implement the Plan or Order of Confirmation, including, without limitation, such declaratory and injunctive order as are appropriate to protect the Debtor, the Debtor's estate, the reorganized Debtor, and the reorganized Debtor's estate from actions of creditors or other parties in interest that are in violation of the Plan.

(j) Hearing and determining any dispute relating to the terms or implementation of the Plan or Order of Confirmation, or that the rights or obligations of any parties in interest with respect hereto.

(k) The Court may modify this Plan consistent with 11 U.S.C. § 1193.

(l) Entering orders authorizing the sale of property of the estate, and concluding and terminating the reorganization case.

## Article 9: Discharge

This Plan is a liquidating plan and no discharge is sought.

## Article 10: Other Provisions

None.

Respectfully submitted,

**X /s/ Sharie L. McDonald**  
[Signature of the Plan Proponent]

**Sharie L. McDonald**  
[Printed name]

**X /s/ Matt Shimanek**  
[Signature of the Attorney for the Plan Proponent]

**Matt Shimanek**  
[Printed name]